FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 28, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

AARON B.,

    Plaintiff,

    v.

ANDREW M. SAUL,
Commissioner of Social Security,

    Defendant.

No. 2:19-CV-00154-RHW

**ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 11, 12. Plaintiff brings this action seeking judicial review pursuant to 42 U.S.C. § 405(g) of the Commissioner of Social Security's final decision, which denied his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401-434. *See* Administrative Record (AR) at 1-6, 12-39. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

# I.    Jurisdiction

Plaintiff filed his application for disability insurance benefits on February 23, 2017, alleging disability beginning on December 27, 2012.[1] *See* AR 15, 213-14. His application was initially denied on May 12, 2017, *see* AR 136-38, and on reconsideration on August 30, 2017. *See* AR 140-42. Plaintiff then filed a request for a hearing. AR 145-46.

A hearing with an Administrative Law Judge ("ALJ") occurred on November 15, 2018. AR 40-73. On December 4, 2018, the ALJ issued a decision concluding that Plaintiff was not disabled as defined in the Act and was therefore ineligible for benefits. AR 12-39. On March 20, 2019, the Appeals Council denied Plaintiff's request for review, AR 1-6, thus making the ALJ's ruling the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. On May 8, 2019, Plaintiff timely filed the present action challenging the denial of benefits. ECF No. 1. His claims are therefore properly before this Court pursuant to 42 U.S.C. § 405(g).

# II.    Five-Step Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

---

[1] Although Plaintiff alleged an onset date of December 27, 2012, he previously filed a Title II application for disability insurance benefits that was denied November 13, 2015. AR 132-35. Plaintiff did not appeal, so that determination became administratively final. *See* 20 C.F.R. §§ 404.955(a), 404.987(a). Thus, the period at issue for purposes of this Title II application begins on November 14, 2015—the day after the denial of his prior application—and ends on December 31, 2017, the date last insured. AR 16.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 2**

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A claimant shall be determined to be under a disability only if the claimant's impairments are so severe that the claimant is not only unable to do his or her previous work, but cannot, considering the claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a)(4). Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(b). If the claimant is, he or she is not entitled to benefits. 20 C.F.R. § 404.1571. If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not, the claim is denied and no further steps are required. Otherwise, the evaluation proceeds to step three.

Step three involves a determination of whether one of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity.

**ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT ~ 3**

20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits. *Id.* If not, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. § 404.1520(e)-(f). If it does, he or she is not entitled to benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c).

### III.   Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). It is the ALJ's responsibility to "resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). When the ALJ presents a reasonable interpretation that

is supported by the evidence, it is not the court's role to second-guess it. *Rollins v.*

*Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Even if the evidence in the record is

susceptible to more than one rational interpretation, if inferences reasonably drawn

from the record support the ALJ's decision, then the court must uphold that

decision. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

## IV.    Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings

and only briefly summarized here.  Plaintiff was 23 years old on the alleged date of

onset, which the regulations define as a younger person. AR 97; *see* 20 C.F.R. §

404.1563(c). He attended school through the 10th grade, obtained his GED, and at

the time of the hearing had completed two years of college-level welding courses.

AR 44-45. He can speak, read, and write in English. AR 304. He has issues with

alcohol abuse. AR 515-16, 522, 529. He has worked for a construction company as

a landscaper and machine operator and for the U.S. Army as a combat engineer.

AR 310-12.

## V.    The ALJ's Findings

The ALJ determined that Plaintiff was not under a disability within the

meaning of the Act at any time from November 14, 2015 (the day after the date of

the Commissioner's prior determination) through December 31, 2017 (the date last

insured). AR 16, 33.

**At step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity from November 14, 2015 through the date last insured. AR 18.

**At step two**, the ALJ found that Plaintiff had the following severe impairments: back disorder, right knee disorder, and posttraumatic stress disorder. AR 18.

**At step three**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpt. P, Appendix 1. AR 19-20.

**At step four**, the ALJ found that Plaintiff had the residual functional capacity to perform medium work as defined in 20 C.F.R. § 404.1567(c), although he could not tolerate exposure to excessive vibration. AR 21. With respect to Plaintiff's mental abilities, the ALJ found that Plaintiff could engage in simple, routine, repetitive tasks. AR 21. He could only have brief, superficial interaction with the general public and with coworkers. AR 21. Given these limitations, the ALJ concluded that Plaintiff was unable to perform any past relevant work. AR 32.

**At step five**, the ALJ found that in light of Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that he could perform. AR 32. These included the jobs of store laborer, hand packager, and bench assembler. AR 33.

## VI.    Issues for Review

Plaintiff argues that the ALJ: (1) improperly discredited his subjective pain complaint testimony, (2) improperly assigned less weight to his Department of Veterans Affairs' disability determination, (3) failed to incorporate all the restrictions assessed by examining psychologist Thomas Genthe, Ph.D., (4) failed to consider two lay witness statements, and (5) improperly excluded the MRI studies that were taken several days before the hearing.[2] ECF No. 11 at 7-9, 11-17.

## VII.    Discussion

## A.    The ALJ did not Improperly Discount Plaintiff's Subjective Complaints

Plaintiff argues the ALJ erred by discounting the credibility of his testimony regarding his subjective symptoms. ECF No. 11 at 8-9, 13-17.

When a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the symptoms alleged—as is the case here—and there is no affirmative evidence suggesting malingering, the ALJ can reject the claimant's testimony about the

---

[2] In his bulleted list of assignments of error, Plaintiff also states that (1) the ALJ failed "to consider the opinions of two State Agency psychological consultants," and (2) failed "to include [his] chronic and debilitating headaches as a severe impairment." ECF No. 11 at 7, 9. However, apart from these bald assertions, Plaintiff's brief contains no substantive discussion of these alleged errors. Accordingly, the Court will not consider them. *See Independent Towers of Wash. v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003) ("[W]e have held firm against considering arguments that are not briefed."); *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994) (admonishing that courts will not "manufacture arguments" for a party and therefore will not consider claims that were not actually argued in the brief).

**ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT ~ 7**

1    severity of his or her symptoms only by offering "specific, clear, and convincing

2    reasons" for doing so. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

3        In this case, the ALJ discounted Plaintiff's symptom complaints because: (1)

4    they were inconsistent with the medical evidence, (2) he did not meaningfully seek

5    treatment for any of his conditions, (3) the record contains evidence of symptom

6    magnification, (4) his complaints were inconsistent with his daily activities, and (5)

7    he made numerous statements that were inconsistent or otherwise appeared less

8    than candid. *See* AR 27-30. These are generally appropriate bases for discounting a

9    claimant's pain testimony. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d

10   1155, 1160-61 (9th Cir. 2008); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir.

11   2005); *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001); *Smolen v. Chater*,

12   80 F.3d 1273, 1284 (9th Cir. 1996).

13       As an initial matter, the Court notes that Plaintiff only addresses rationales

14   one, three, and four.[3] *See* ECF No. 11 at 8-9, 13-17. He ignores the ALJ's

15   discussion of his failure to seek treatment, as well as the ALJ's analysis of his

16

17       [3] Plaintiff also baldly asserts that the ALJ failed to "specifically identify what testimony
     was not credible or what evidence undermines which allegations." ECF No. 11 at 13. The record
18   demonstrates otherwise. Over seven single-spaced pages, the ALJ outlined Plaintiff's hearing
     testimony, his specific complaints with respect to each condition, and the relevant medical
19   evidence. *See* AR 21-27. The ALJ then discounted his testimony based on the five rationales
     outlined above and supported those rationales with numerous specific examples accompanied by
     citations to the record. *See* AR 21-27. While Plaintiff may disagree with the ALJ's
20   *characterization* of the record, his bald assertion that the ALJ failed to "specifically identify
     what testimony was not credible or what evidence undermines which allegations" plainly lacks
     merit. ECF No. 11 at 13.

**ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT ~ 8**

1    inconsistent statements. *See id.* By not addressing all of the ALJ's rationales,

2    Plaintiff has waived his challenge to the ALJ's consideration of his subjective pain

3    testimony. *See Carmickle*, 533 F.3d at 1161 n.2; *Matthew S. v. Saul*, 4:18-CV-

4    05115-RHW, ECF. No 16 at 12-15 (E.D. Wash. 2019); *Debra S. v. Saul*, No. 2:19-

5    CV-00131-MKD, 2019 WL 6828384, at *5 (E.D. Wash. 2019). Nevertheless, the

6    Court will review the ALJ's five rationales.

7        **1.    Inconsistent with the medical evidence**

8        The ALJ first discounted Plaintiff's testimony on the basis that it was

9    inconsistent with the longitudinal medical record. *See* AR 22-25. In doing so, the

10   ALJ outlined the medical evidence with respect to each one of Plaintiff's

11   impairments: his back, his right knee, and his mental condition. *See* AR 22-25.

12       With respect to Plaintiff's back, the ALJ first noted that Plaintiff's 2012 x-

13   rays were "completely unremarkable." AR 22; *see* AR 1220. The ALJ then

14   outlined Plaintiff's evaluations and concluded that the examiners' findings were

15   largely benign. AR 22-23. In June 2015, he had decreased flexion but normal gait,

16   normal reflexes, full muscle strength, and intact leg sensation.[4] AR 1331-34. His

17   straight leg raise tests were negative bilaterally and he had no spinal radiculopathy

18   or arthritis. AR 1334, 1337. At his September 2015 consultative examination, his

19   spine was tender but he had full range of motion in his back, as well as full

20

---

[4] Plaintiff testified that his legs were entirely numb. AR 51.

**ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT ~ 9**

strength, intact sensation, and normal reflexes in his legs. AR 504-05. He could

raise his legs to 90 degrees during straight leg raise tests. AR 504. He could "squat

and hop without a problem." AR 504. In January 2017, he had reduced lumbar

range of motion but a normal gait, as well as full strength, intact sensation, and

normal reflexes in both legs. AR 1316-18. His straight leg raise tests were again

negative bilaterally and he again had no spinal radiculopathy or arthritis. AR 1318,

1321. At his April 2017 consultative examination, he "was able to sit comfortably

throughout the interview and examination," he "was easily able to arise from a

chair, and he had no difficulty getting on or off the exam table." AR 524. "He had

no difficulty removing and replacing his shoes."[5] AR 524. He could "ambulate at a

brisk pace without difficulty and without assistance," and also "perform a partial

squat." AR 524. His straight leg raise tests were again negative bilaterally. AR 524.

His back was not tender. AR 524. After outlining this evidence, the ALJ concluded

that it did "not substantiate [Plaintiff's] description of debilitating lumbar

radiculopathy." AR 23.

　　　With respect to Plaintiff's right knee, the ALJ again outlined Plaintiff's

evaluations and concluded that the examiners' findings were largely benign. AR

23-24. At the September 2015 examination, Plaintiff had full range of motion in

both knees. AR 505. He had a "very normal stride" with "[n]o hesitation or

---

[5] Plaintiff testified that he needed to "lay on the bed just to put my socks on." AR 60.

**ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT ~ 10**

limitation in his walk," and could squat and hop "without a problem." AR 504.

When the VA evaluated him in January 2017 for his knee condition, his range of

motion was reduced but there was no evidence of joint instability, effusion,

crepitus, subluxation, or pain with weight bearing. AR 1304, 1308. He was able to

perform repetitive-use testing without loss of function. AR 1305. Imaging studies

were done and there was no evidence of degenerative or traumatic arthritis. AR

1311. At the April 2017 consultative examination, he had full range of motion in

his knees. AR 523. "Examination of the knees was negative for instability or

effusion." AR 524. He could "ambulate at a brisk pace without difficulty and

without assistance. He did not limp." AR 524. He was able to tandem walk, stand

on his toes and heels, and "stand with all of his weight on one leg at a time." AR

523-24. The examining physician did not believe Plaintiff had any knee conditions

at all. AR 524. Finally, in March 2018 (after the date last insured), Plaintiff saw a

primary care provider for knee pain. AR 1571. He had an antalgic gait on the right

side, mild effusion, and mild joint line tenderness. AR 1574. However, he had

normal range of motion, no tenderness along or grinding in the patella, and no

instability. AR 1574. By his next visit his knee pain was "resolving" and by July

2018 it had resolved entirely. *See* AR 1580, 1586-87. After outlining this evidence,

the ALJ concluded that it did "not substantiate [Plaintiff's] claims of incapacitating

right knee symptoms." AR 24.

1    Finally, with respect to Plaintiff's mental condition, the ALJ noted that

2    Plaintiff had "unremarkable mental status findings during the few occasions that he

3    ha[d] been seen by providers" outside of disability evaluations. AR 25. Providers

4    observed no signs of depression, anxiety, or agitation. AR 529, 1545, 1548, 1552,

5    1556, 1574, 1579. His scores on depression and anxiety screening tests were either

6    negative or mild. AR 527, 1543, 1555, 1575-76, 1585. The ALJ concluded that

7    "[t]hese completely unremarkable objective signs [did] not corroborate his claims

8    of a 'shitty' mood or uncontrollable anxiety/panic attacks." AR 25.

9    Plaintiff argues that "[t]he overall record, as we have reviewed above

10   supports a conclusion that [he] is limited physically and mentally." ECF No. 11 at

11   8. However, apart from the 2018 MRI studies (which the ALJ properly excluded)

12   and the VA rating decisions (which are not themselves medical evidence), Plaintiff

13   relies on only four medical records to support this argument: (1) an August 2013

14   VA neuropsychological evaluation, AR 475-77, (2) a January 2017 VA

15   neuropsychological evaluation, AR 1343-1350, (3) an April 2017 state agency

16   psychological evaluation, AR 514-19, and (4) a March 2018 primary care chart

17   note, AR 1571-76. *See* ECF No. 11 at 3-5.

18   The first and fourth records—the August 2013 VA neuropsychological

19   evaluation and the March 2018 chart note—do not relate to the period at issue in

20   this case (November 2015 to December 2017). Moreover, neither provider

1  documented anything other than mild restrictions.[6] *See* AR 475-77 ("No further

2  Polytrauma care indicated at this time."), 1571-76.

3      As for the second record—the January 2017 VA neuropsychological

4  evaluation—Plaintiff is correct that the psychologist affirmed the prior diagnoses

5  of PTSD and alcohol abuse, and that she also documented "poor attention, poor

6  memory, [and] diminished executive functioning." AR 1343, 1349. However, she

7  also opined specifically on Plaintiff's work restrictions and noted that he would

8  "generally function[] satisfactorily, with normal routine behavior, self-care and

9  conversation," and that he would only have "occasional decrease in work

10  efficiency and intermittent periods of inability to perform occupational tasks." AR

11  1344.

12      In the third record that Plaintiff relies on—the April 2017 state agency

13  psychological evaluation—the psychologist noted evidence of symptom

14  magnification. AR 518. He noted that Plaintiff's "inability to provide even basic

15  information" about his symptoms went "beyond being a mere poor historian" and

16  placed "the veracity of his claims into question." AR 518. Due to this, the

17

18      ────────────────

        [6] Plaintiff asserts that at the same time as the August 2013 neuropsychological evaluation,
19  VA doctor Lisa Peak, M.D., concurrently diagnosed "traumatic brain injury" and "recommended
    that he needed further comprehensive evaluations." ECF No. 11 at 4. However, Dr. Peak opined
    that Plaintiff's service-related concussions had resolved and that they were unrelated to his
20  current cognitive issues. AR 474. Moreover, contrary to Plaintiff's assertion, she did not
    recommend "further comprehensive evaluations," but rather stated, "[n]o [p]olytrauma care
    indicated at this time." AR 474.

**ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT ~ 13**

psychologist declined to provide formal diagnoses. AR 518. Nevertheless, he

concluded that Plaintiff was "able to maintain a regular work schedule and

complete a normal 40-hour workweek." AR 519.

Accordingly, the four medical records that Plaintiff relies on do not support

his argument that "[t]he overall record, as we have reviewed above supports a

conclusion that [he] is limited physically and mentally." ECF No. 11 at 8. The ALJ

did not error when he discounted Plaintiff's subjective complaints on the basis that

they were inconsistent with the medical evidence.

### 2.    Failure to seek treatment

The ALJ also discounted Plaintiff's subjective complaints on the basis that

he did not seek treatment for any of his conditions. AR 24-25. The ALJ noted that

the medical record consists almost entirely of consultative examinations for

disability benefits. AR 24. The ALJ further noted that although Plaintiff had access

to treatment at the VA, he never sought any of its services during the period at

issue, other than when he sought to increase his disability rating. AR 24. This

prompted the VA to send him the following letter in July 2017:

> VA policy requires that patients be seen at least every 2 years to stay
> enrolled in primary care and to receive medications prescribed by
> their primary care provider.
>
> Our records show that you are currently enrolled in Primary Care and
> have not been seen by your primary care provider within the past 2
> years.

1    AR 1402. The ALJ concluded that if Plaintiff's back and right knee problems were

2    as chronic and severe as he alleged, he "would have sought regular care for these

3    conditions." AR 24.

4         Finally, the ALJ reasoned that Plaintiff never sought mental health treatment

5    for his psychological condition. AR 25. Multiple examining providers told Plaintiff

6    that he would benefit from counseling and medication. AR 512, 519, 1349, 1363.

7    Plaintiff did not follow these recommendations, did not engage with counseling or

8    medication management, and never sought any other mental health treatment. AR

9    514, 1346, 1546 ("Pt has discussed [counseling] but refused"). The ALJ concluded

10    that if Plaintiff's mental health symptoms were as chronic and incapacitating as he

11    alleged, he would have attempted to obtain care for his condition and comply with

12    the examining providers' recommendations. AR 25.

13         Plaintiff does not mention or challenge this rationale in his brief. *See* ECF

14    No. 11.

15    **3.    Symptom magnification**

16         The ALJ also discounted Plaintiff's subjective complaints on the basis that

17    the record contains evidence of symptom magnification. AR 25-26. When Thomas

18    Genthe, Ph.D., examined Plaintiff in April 2017, he noted that Plaintiff "had

19    extreme difficulty providing even basic information, which makes it difficult to

20    substantiate his claims." AR 518. Dr. Genthe believed that Plaintiff's "inability to

1    provide even basic information" about his symptoms went "beyond being a mere

2    poor historian, but place[d] the veracity of his claims into question." AR 518. Dr.

3    Genthe declined to provide formal diagnoses, given that Plaintiff's presentation

4    was "neither reflective of depression or anxiety," and also because of Plaintiff's

5    "lack of ability to provide even very basic information." AR 518.

6        The ALJ also reasoned that the physical examination findings of the

7    providers were additional evidence of potential symptom magnification. AR 26.

8    Plaintiff alleged that he was completely incapacitated and was dependent on his

9    girlfriend for basic care. AR 349-56; *see also* AR 51-66. The ALJ noted that

10   someone with this extreme level of debilitation "would lose muscle tone/bulk and

11   develop atrophy." AR 26. However, multiple examining physicians between 2015

12   and 2017 commented on Plaintiff's muscular physique. *See* AR 506 ("The patient

13   is well muscled and I don't see any problems with him lifting 100 pounds

14   occasionally and 50 pounds frequently."), 507 ("The claimant has a stocky,

15   muscular body habitus."), 522 ("The claimant is a lean, muscular adult."); *see also*

16   AR 1307, 1318, 1334 (noting no muscle atrophy). In June 2017, a provider

17   documented that Plaintiff exercised regularly. AR 528. The ALJ concluded that

18   this evidence "detract[ed] from the reliability of his self-report." AR 26.

19       Plaintiff argues that no one "has mentioned the term 'malingering.'" ECF

20   No. 11 at 9. While this is true, the ALJ did not find that Plaintiff was malingering.

**ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT ~ 16**

*See* AR 25-26. Such a finding (if supported by substantial evidence) would have entirely relieved the ALJ from his burden of providing "specific, clear, and convincing reasons" for discounting Plaintiff's testimony. *See Carmickle*, 533 F.3d at 1160. An ALJ may, however, point to evidence of symptom exaggeration— which is easier to establish—as an affirmative reason for discounting a claimant's testimony, which is what the ALJ did here. *E.g.*, *Timothy J. v. Comm'r of Soc. Sec.*, No. 1:17-CV-03125-JTR, 2018 WL 4179100, at *8 (E.D. Wash. 2018).

### 4.    Daily activities

The ALJ also discounted Plaintiff's complaints on the basis that they were inconsistent with his daily activities. AR 26. With respect to hobbies, Plaintiff told a VA neuropsychologist in August 2013 that he spent his time "riding dirt bikes, fishing, walking trails near home, and working on vehicles and construction projects." AR 476. He similarly told Dr. Genthe in April 2017 that he liked to go camping, take his sons fishing, and take them to the dirt bike track. AR 516.

With respect to basic self-care, Plaintiff told Dr. Genthe that he was able to care for his own hygiene needs, including grooming, dressing, and bathing. AR 516. He further stated that he was able to prepare his own meals and feed himself, shop for groceries, and independently complete household chores such as the dishes, laundry, and vacuuming. AR 516. He said he had no problems getting along with others. AR 517.

1    Plaintiff also attended college welding classes from 8:00 a.m. to 5:30 p.m.

2    on weekdays. AR 45. At the time of the hearing, he had completed two years of

3    coursework and had one left to go. AR 45, 1583.

4    Plaintiff cites several Ninth Circuit cases holding that a claimant's ability to

5    perform some daily activities, such as grocery shopping, cooking, watching

6    television, driving, etc., does not necessarily detract from his or her credibility.

7    ECF No. 11 at 14-15 (citing *Vertigan v. Halter*, 260 F.3d 1044, 1049-50 (9th Cir.

8    2001); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). Plaintiff is correct that

9    ALJs must be cautious when concluding that daily activities are inconsistent with

10    pain testimony, given that many home activities may not be easily transferable to a

11    work environment where it might be impossible to rest periodically or take

12    medication. *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014). However, if

13    the claimant's level of activity is inconsistent with the limitations he or she claims

14    to have, this has a bearing on the claimant's credibility. *Id.*; *accord Reddick v.*

15    *Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

16    In this case, Plaintiff reported that due to chronic incapacitating pain and his

17    mental condition, he relied on his girlfriend to cook, to do all the shopping, to

18    remind him to shower and shave, and to do all the household chores and yardwork.

19    AR 350-53. He reported that he had problems getting along with people, that he

20    was "not good at relationships at all," and that he was "very cold, standoffish, and

distant." AR 354. He reported that he could only pay attention to something for "a couple of minutes, sometimes seconds," and that he could never finish anything he started. AR 354. He stated that it was "impossible [for him] to follow directions, remember anything, work with others, [or] complete tasks." AR 356. Finally, he reported that it was impossible for him "to sit at a desk for any period of time." AR 356.

Similarly, Plaintiff testified that he needed to lie down "all the time" and was only able to stand for a few minutes. AR 51, 59. He testified that his back stopped him "from pretty much doing anything." AR 66. For example, he stated that he was unable to peel potatoes, sit on a riding lawnmower for 45 seconds, or walk 400 yards. AR 52, 57-58.

While it is true that a claimant's ability to perform some daily activities does not necessarily detract from his or her credibility, in this case Plaintiff's activities specifically contradicted the limitations he claimed to have. The ALJ therefore properly discounted his credibility on this basis. *See Garrison*, 759 F.3d at 1016.

### 5. Statements that were inconsistent or otherwise appeared less than candid

Finally, the ALJ found that several inconsistent statements further undermined Plaintiff's credibility. AR 26-27. First, the ALJ noted that Plaintiff "alleges being disabled since December 2012, when he was discharged from the military, due to his back, knee, and PTSD problems." AR 26. However, the ALJ

1    noted that Plaintiff "was discharged from the military not because of these physical

2    or mental problems, but because he was drunk on duty." AR 26; *see* AR 476 ("He

3    reported being chaptered out in December 2012 (14-12C r/t drinking on duty);

4    final rank E-3 (demoted from E-4)"), 1346 ("discharge for 'being drunk on duty'"),

5    1359 ("discharge related to drinking").

6        Second, the ALJ noted that during a 2017 VA Compensation & Pension

7    Examination, Plaintiff reported that he had "been previously diagnosed with a

8    traumatic brain injury, which he attributed to being 'blown up so many times.'"

9    AR 26; *see* AR 1346 ("The veteran reports that he was diagnosed with TBI

10   because 'I have been blown up so many times.'"), AR 1359. However, Plaintiff

11   had previously told a psychologist in 2013 that "only two events during his

12   military career . . . were concerning for possible concussions." AR 27. The first

13   was when an IED detonated near his vehicle. AR 475. He briefly lost

14   consciousness but was evaluated by a medic, cleared for continued full duty, and

15   reported no lingering concerns or difficulties afterward. AR 475. The second

16   incident was when he fell off a truck while doing routine maintenance. AR 475-76.

17   He again briefly lost consciousness but had no immediate symptoms, was

18   evaluated by a medic, cleared for continued duties, and had no further difficulties.

19   AR 476. The VA physician and psychologist both told Plaintiff in 2013 that he had

20   "recovered well from these events" and did not "have any residual cognitive

**ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT** ~ 20

issues." AR 474, 477. The ALJ found that Plaintiff's assertions during the 2017 C&P Exam that these events were the cause of his mental symptoms was a reason to question his complaints. AR 27.

Finally, the ALJ noted Plaintiff's testimony that he was doing poorly in welding school and was on academic probation. AR 27; *see* AR 45, 47. However, he had recently told a provider that he was "doing well" in school. AR 1542. He also told the provider that he was a year away from graduating. AR 1583. The ALJ found that it was "implausible that someone who allegedly was doing so poorly in school would be so close to graduating from the program." AR 27. The ALJ further found that it was "implausible that someone who allegedly has severe memory loss and debilitating back and knee pain would undergo retraining in a profession with jobs that the DOT generally characterizes as medium to heavy and semi-skilled to skilled work." AR 27.

Plaintiff does not mention or challenge this rationale in his brief. *See* ECF No. 11.

///

///

///

///

///

1

2

**B.     Plaintiff Fails to Establish Error with how the ALJ Considered his VA Disability Rating**

3

4

Plaintiff argues that the ALJ should have given more weight to the VA's 100% disability rating.[7] ECF No. 11 at 7, 11-13.

5

6

For claims filed before March 27, 2017, such as this one, ALJs are required to consider and "ordinarily give great weight to" VA disability determinations.[8] *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002); *see also McLeod v. Astrue*, 640 F.3d 881, 886 (9th Cir. 2011); *Luther v. Berryhill*, 891 F.3d 872, 876-77 (9th Cir. 2018). Great weight is ordinarily warranted "because of the marked similarity between these two federal disability programs." *McCartey*, 298 F.3d at 1076. However, a VA rating is not conclusive and "does not necessarily compel the SSA to reach an identical result." *Id.* An ALJ may discount a VA disability rating, but must give "persuasive, specific, valid reasons for doing so." *Id.*

7

8

9

10

11

12

13

Here, the ALJ acknowledged that the Ninth Circuit's *McCartey* decision required him to ordinarily give VA disability determinations great weight. AR 28.

14

15

16

[7] Plaintiff repeatedly asserts "that the VA found [him] 170% disabled." ECF No. 11 at 12. This mischaracterizes how the VA calculates disability ratings. When a veteran has multiple service-connected conditions, each with its own disability rating, the VA uses a formula and set of tables to calculate his or her "combined disability rating." *See* 38 C.F.R. § 4.25. The VA does not award combined disability ratings higher than 100 percent. *See* U.S. Dept. of Veterans Affairs, *About VA disability ratings*, https://www.va.gov/disability/about-disability-ratings/.

17

18

19

[8] The Commissioner amended the regulations for claims filed on or after March 27, 2017 and got rid of this requirement. Under the new regulations, ALJs are not required to "provide any analysis in [their] determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether [the claimant is] disabled, blind, employable, or entitled to any benefits." 20 C.F.R. § 404.1504.

20

1    However, the ALJ concluded that in this case, persuasive, specific, and valid

2    reasons supported assigning the VA's rating less weight. AR 28.

3        First, the ALJ reiterated the longitudinal medical evidence as set forth above,

4    *see supra* at 9-14, and found that it was inconsistent with the VA's decision. AR

5    28-29. The ALJ also found that the VA's decision was undermined by Plaintiff's

6    failure to seek treatment. AR 28-29. The ALJ concluded that the VA's ratings

7    therefore appeared "to rely heavily on the claimant's self-report," which was "not

8    fully reliable, given [the] evidence of symptom magnification and other

9    discrepancies replete throughout the record." AR 29.

10       Second, the ALJ reasoned that the VA's disability programs differ from the

11   Social Security Administration's in several crucial areas. AR 29-30. Specifically,

12   the ALJ noted that: (1) the VA expresses disability as a percentage of diminished

13   earning capacity, whereas the SSA determines whether a claimant is disabled or

14   blind, (2) the VA considers a hypothetical average person's earning ability without

15   considering a specific veteran's age, education, or work experience, whereas the

16   SSA does an individualized assessment, (3) the two programs have different

17   technical eligibility requirements, (4) importantly, the VA has a much more

18   deferential standard for evaluating subjective complaints than the SSA—the VA

19   uses the "reasonable doubt" standard, 38 C.F.R. § 3.102, whereas the SSA uses a

20   preponderance of the evidence standard, and (5) the two agencies have different

1    definitions of "unemployable" and "substantially gainful occupation," and also use

2    different resources to determine if a claimant meets those definitions. AR 29-30.

3        Thus, the ALJ went beyond merely referencing the VA's disability rating—

4    he stated a proper understanding of the law, considered the VA's decision,

5    articulated the amount of weight afforded to that decision, and explained in detail

6    his reasons for doing so. AR 28-30.

7        Plaintiff does not address the ALJ's first rationale for discounting the VA

8    rating. *See* ECF No. 11 at 11-13. He asserts only that "[t]he case before us has a

9    record that includes approximately 2000 pages of medical information, most of it

10    from the VA records of evaluations and treatment." ECF No. 11 at 12. However,

11    Plaintiff makes no attempt to explain how any of it supports the VA's decision or

12    undermines the ALJ's reasoning. *See id.*

13        Plaintiff briefly addresses the ALJ's second rationale for discounting the

14    ALJ's rating, arguing that "[t]hese were likely differences already weighed by the

15    court in *McCartey*." ECF No. 11 at 12. However, these were not factors the

16    *McCartey* court considered. *See McCartey*, 298 F.3d at 1076.

17        While Plaintiff takes issue with the ALJ's decision to assign less weight to

18    the VA rating, he fails to show how the ALJ's reasoning was wrong. And without

19    an identifiable legal error or key factual finding that is unsupported by substantial

20    evidence, the Court must uphold the ALJ's decision.

**ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT ~ 24**

**C.     The ALJ Fairly Incorporated the Opinion of Examining Psychologist Thomas Genthe, Ph.D., into the Residual Functional Capacity**

Dr. Genthe examined Plaintiff in April 2017. AR 514-19. He reviewed records, performed a diagnostic interview, made behavioral observations, and conducted a mental status examination. AR 514. His diagnostic impression was mild depression, anxiety disorder, and ADHD. AR 518. He also included a rule-out diagnosis of major neurocognitive disorder with behavioral disturbance. AR 518. However, as discussed above, Dr. Genthe declined to provide formal diagnoses, given that Plaintiff's presentation was "neither reflective of depression or anxiety," and also because of Plaintiff's "lack of ability to provide even very basic information." AR 518.

Regarding Plaintiff's ability to work, Dr. Genthe believed that Plaintiff was able to understand and remember short, simple instructions, maintain attention and concentration for brief periods, and consistently perform simple work activities. AR 518. He believed that Plaintiff had "fair" capabilities when it came to interacting with the public, asking questions and accepting instructions, getting along with coworkers, and responding to criticism from supervisors. AR 518. He believed that Plaintiff would have problems understanding and remembering detailed instructions, maintaining attention and concentration for extended periods, and responding appropriately to workplace changes. AR 518. Taking all these various abilities and limitations into account, Dr. Genthe concluded that Plaintiff

1   was "able to maintain a regular work schedule and complete a normal 40-hour

2   workweek." AR 519.

3        The ALJ assigned significant weight to Dr. Genthe's opinion. AR 30. The

4   ALJ acknowledged Dr. Genthe's belief that Plaintiff would have trouble

5   responding appropriately to workplace changes. AR 30. Thus, the ALJ limited

6   Plaintiff to simple, routine, repetitive tasks, which he believed would minimize

7   Plaintiff's exposure to workplace change. AR 30.

8        The ALJ also acknowledged Dr. Genthe's belief that Plaintiff would have

9   some issues getting along with supervisors, coworkers, and the general public. AR

10  30. To accommodate these issues, the ALJ limited Plaintiff to brief, superficial

11  interactions with coworkers and the public. AR 21. However, the ALJ did not

12  agree that Plaintiff had issues dealing with supervisors, reasoning that he had never

13  had any problems interacting with various other authority figures in his life. AR

14  30.

15       Finally, the ALJ acknowledged Dr. Genthe's belief that Plaintiff would have

16  trouble maintaining attention and concentration for extended periods. AR 30.

17  However, the ALJ found that Plaintiff's completion of two years of college-level

18  welding classes indicated "that he should be able to sustain less intensive simple

19  tasks for at least two hour[] intervals (*i.e.*, consistent with normal breaks)." AR 30.

20

**ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT ~ 26**

Plaintiff argues that the ALJ failed to include Dr. Genthe's restrictions in the residual functional capacity, including his abilities

> to interact with the public, ask question[s] or ask for help, accept instructions from supervisors, get along with co-workers and respond appropriately to criticism from supervisors, and would be unlikely to be able to maintain focus and concentration for extended periods of time, and unlikely to respond appropriately to changes in the work setting.

ECF No. 11 at 8.

Contrary to Plaintiff's assertion, the ALJ incorporated many of these restrictions into the residual functional capacity. AR 21, 30; *see Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). When the ALJ declined to incorporate a particular restriction, he explained and supported that decision with specific examples. AR 30. Accordingly, Plaintiff fails to establish any error with respect to how the ALJ considered Dr. Genthe's opinion.

## D.    If the ALJ Erred by Failing to Consider Two Lay Witness Statements, Any Error was Harmless

Plaintiff appears to argue that the ALJ failed to consider two letters from lay witnesses who wrote to the VA in support of his rating appeals. ECF No. 11 at 14.

The Social Security regulations require ALJs to consider testimony from family and friends submitted on behalf of the claimant. *See* 20 C.F.R. §§ 404.1529(c)(3), 404.1545(a)(3). ALJs cannot disregard lay witness testimony

1    without comment. *Molina*, 674 F.3d at 1114. In order to discount competent lay

2    witness testimony, ALJs must give "germane" reasons. *Id.*

3         However, the Ninth Circuit has held that an ALJ's failure to discuss a lay

4    witness statement is harmless when (1) the lay witness "does not describe any

5    limitations not already described by the claimant," and (2) the ALJ provided

6    legally sufficient reasons for rejecting the claimant's own testimony, and those

7    reasons "apply equally well to the lay witness testimony." *Id.* at 1117; *see also*

8    *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) (ALJ's failure to

9    discuss son's testimony would have been harmless if the ALJ had provided legally

10   sufficient reasons for rejecting claimant's own testimony). In other words, if the

11   lay witness's testimony "is cumulative of other testimony that the ALJ properly

12   rejected." *Molina*, 674 F.3d at 1120.

13        In this case, two people submitted letters to the VA on behalf of Plaintiff.

14   The first was Plaintiff's friend's mother. AR 866. She wrote that Plaintiff

15        has continuous nightmares, walks away to be alone, [is] very short
16        tempered, [is] easily agitated for no known reason, [and has] short and
             long term loss of memory. He struggles with even the simplest day to
             day tasks. He suffered a fall while in Iraq which has caused him severe
17        back pain as well.

18   AR 866. She believed that Plaintiff was "unable to work [due] to the severity of his

19   issues." AR 866.

20

**ORDER GRANTING DEFENDANT'S MOTION FOR**
**SUMMARY JUDGMENT** ~ 28

1    The second letter was from someone who served with Plaintiff in the Army.

2    AR 882. He wrote that Plaintiff fell off a military vehicle, injured his back, and has

3    struggled with back pain since. AR 882. He also stated that Plaintiff suffers from

4    PTSD, which causes him problems in relationships, in his social life, with

5    remembering things, and in finding employment. AR 882. He believed that

6    Plaintiff had been unable to obtain a job due to the severity of his back pain and

7    PTSD. AR 882.

8    The ALJ did not discuss these two letters in his decision. *See* AR 14-33. The

9    likely reason is because they were never submitted to the ALJ—they were

10   submitted to the VA years earlier and buried in the VA records. AR 866, 882. It is

11   unclear whether the ALJ erred in these circumstances by not specifically

12   addressing them. But even if he did, any error was harmless. The letter writers did

13   not describe any limitations beyond those Plaintiff himself described, which the

14   ALJ discussed at length and rejected because they were contradicted by the

15   medical evidence, Plaintiff's failure to seek treatment, the evidence of symptom

16   magnification, his daily activities throughout the alleged disability period, and

17   various other inconsistent statements. AR 21-27. Because the ALJ, in discussing

18   Plaintiff's testimony, had validly rejected the limitations the lay witnesses

19   described, the Court is confident that the ALJ's failure to specifically address these

20   two letters did not alter the ultimate nondisability determination.

**ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT ~ 29**

1    **E.    The ALJ did not Erroneously Exclude Plaintiff's 2018 MRI Studies**

2        Plaintiff contends that the ALJ erred when he excluded the MRI studies that

3    were taken several days before the hearing.[9] ECF No. 11 at 6, 9.

4        The Social Security regulations require claimants to submit any written

5    evidence to the ALJ, or inform the ALJ about any such evidence, "no later than 5

6    business days before the date of the scheduled hearing."[10] 20 C.F.R. § 404.935(a).

7    If the claimant fails to do so, the ALJ "may decline to consider or obtain the

8    evidence." 20 C.F.R. § 404.935(a).

9        However, the Commissioner has also recognized "that there will be

10    circumstances in which claimants cannot produce evidence at least five business

11    days before the hearing." *Ensuring Program Uniformity at the Hearing and*

12    *Appeals Council Levels of the Administrative Review Process*, 81 Fed. Reg. 90987,

13    90990, 2016 WL 7242991 (Dec. 16, 2016). To balance the concerns of fairness and

14    efficiency, the Commissioner "included appropriate exceptions to the 5-day

15    requirement to ensure fairness when a claimant or his or her representative actively

16    and diligently seeks evidence but is unable to obtain it." *Id.* Thus, the regulations

17

18        [9] In his brief, Plaintiff incorrectly states that these MRIs were performed "several days
after the hearing." ECF No. 11 at 9. They were taken on November 13—two days before the
19    hearing. *See* ECF No. 11-1.

20        [10] This rule applies to both claimants and their representatives. 20 C.F.R. § 404.1740(b).
Claimants are obligated to timely inform their representatives about any evidence that may be
relevant to their case. AR 16.

**ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT ~ 30**

provide that if a claimant misses the five-day deadline, the ALJ must nevertheless

accept the untimely evidence when:

> (1) Something the Commissioner did misled the claimant;
>
> (2) The claimant had a physical, mental, educational, or linguistic limitation that prevented him or her from informing the ALJ about or submitting the evidence earlier; or
>
> (3) Some other unusual, unexpected, or unavoidable circumstance beyond the claimant's control prevented him or her from informing the ALJ about or submitting the evidence earlier. Examples include, but are not limited to:
>
>> a. The claimant was seriously ill and that illness prevented him or her from contacting the ALJ in person, in writing, or through a friend, relative, or other person;
>>
>> b. There was a death or serious illness in the claimant's immediate family;
>>
>> c. Important records were destroyed or damaged by fire or other accidental cause; or
>>
>> d. The claimant actively and diligently sought evidence from a source and the evidence was not received or was received less than 5 business days prior to the hearing.

20 C.F.R. § 404.935(b).

Here, the record shows that in October 2017, the hearings office sent

Plaintiff a letter advising him: "You must inform us about or give us evidence no

later than five business days before the date of your hearing. The ALJ may choose

to not consider the evidence if you fail to provide it timely." AR 148. In August

2018, the hearings office sent Plaintiff a Notice of Hearing, which stated in bold:

> **If you are aware of or have more evidence, such as recent records, reports, or evaluations, you must inform me about it or give it to me no later than 5 business days before the date of your hearing. If you do not comply with this requirement, I may decline to consider the evidence unless the late submission falls within a limited exception.**

AR 164 (emphasis in original). Plaintiff signed and returned a form acknowledging

receipt. AR 185.

At the hearing on November 15, 2018, Plaintiff stated that he had MRI scans

of his back and knee two days beforehand. AR 48. Plaintiff's counsel then asked

the ALJ to keep the record open so that he could obtain the MRI results and submit

them for consideration. AR 48. The ALJ stated that this violated the five-day rule

and asked counsel if he had ever mentioned the MRI studies beforehand. AR 48.

Counsel acknowledged that he had not, but argued that it was "[h]ard to provide

records that didn't exist." AR 48.

In his decision, the ALJ excluded the MRI records. AR 16. The ALJ

reasoned that the MRIs had not been ordered under emergency circumstances and

as such, Plaintiff and counsel "had more than ample time, prior to the hearing," to

inform him that the MRIs had been scheduled. AR 16; *see* ECF No. 11 at 5

(Plaintiff had been "seeking these studies for many months"). The ALJ concluded

that this was not a circumstance beyond Plaintiff's control that prevented him from

informing the ALJ about this evidence earlier. AR 16 (citing 20 C.F.R. § 404.935(b)). Moreover, the ALJ also noted that the two MRIs were taken almost a year after Plaintiff's insured status had expired. AR 16.

Plaintiff solely argues that it would be "impossible for [him] to provide records that don't exist before the hearing is held."[11] ECF No. 11 at 9. While true, this situation is why the rule gives claimants the option to either "inform [the ALJ] about *or* submit the evidence before the deadline." 20 C.F.R. § 404.935(b) (emphasis added). When a claimant has a medical appointment on the same week as his or her hearing, the claimant can comply with the five-day rule by advising the ALJ in advance that additional records will be forthcoming. *E.g.*, *Sheila M. v. Comm'r of Soc. Sec.*, No. 1:19-CV-03063-SMJ, 2020 WL 3620099, at *4 (E.D. Wash. 2020); *Albert v. Comm'r of Soc. Sec.*, No. 2:18-CV-907, 2019 WL 2912091, at *4 (S.D. Ohio 2019) ("[The rule] requires that the claimant, at the very least, notify the agency that additional records will be offered."); *Shuey v. Berryhill*, No. 1:18-CV-00626, 2019 WL 1303201, at *5 (M.D. Pa. 2019). Accordingly, the ALJ's rejection of the two MRI studies on the basis that they violated the five-day rule was a correct application of the law and is supported by substantial evidence.

---

[11] Plaintiff does not contend that any of the exceptions in 20 C.F.R. § 404.935(b) apply, such as an "unusual, unexpected, or unavoidable circumstance beyond [his] control" that prevented him from informing the ALJ about the records earlier.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 33**

## VIII.  Order

Having reviewed the parties' briefs, the record, and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and is free from legal error. Accordingly, **IT IS ORDERED:**

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **DENIED.**

2.    Defendant's Motion for Summary Judgment, **ECF No. 12**, is **GRANTED.**

3.    Judgment shall be entered in favor of Defendant and the file shall be

       **CLOSED**.

       **IT IS SO ORDERED.** The District Court Executive is directed to enter this order, forward copies to counsel, and close the file.

       **DATED** this August 28, 2020.

_s/Robert H. Whaley_
ROBERT H. WHALEY
Senior United States District Judge

**ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT ~ 34**